# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 23-cv-01888-REB
(Appeal from Bankruptcy Case No. 22-012455-TBM;
Adv. Proc. 22-01258-TBM)

IN RE:

CHRISTOPHER PATRICK BOYD,

Debtor.

_____

HEMP RECOVERY COMPANY, LLC,
Plaintiff / Appellee,
v.
CHRISTOPHER PATRICK BOYD,
Defendant / Appellant.

_____

### OPENING BRIEF OF APPELLANT CHRISTOPHER PATRICK BOYD

_____

On appeal from Bankruptcy Adversary Proceeding 22 – 01258 TBM before the
United States Bankruptcy Court for the District of Colorado.

Dated: October 31, 2023

Respectfully submitted by:
Stephen E. Berken, Esq.
**BERKEN CLOYES P.C.**
1159 Delaware St.
Denver, CO 80204
Tel: (303) 623-4357
Facsimile: (720) 554-7853
Email: stephenberkenlaw@gmail.com
*Counsel for Appellant Christopher Boyd*

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ...........................................................................2

**TABLE OF AUTHORITIES** ....................................................................3

**JURISDICTIONAL STATEMENT** ........................................................5

    (A) Basis for the Bankruptcy Court's subject-matter jurisdiction ...............................5

    (B) Basis for the District Court's Jurisdiction   ……………………………………………5

    (C) Filing Date ………………………………………………..…………………………   5

    (D) Appeal from Final Order  ………………………..………………………………… 6

**STATEMENT OF THE ISSUES PRESENTED** .................................6

**STANDARD OF REVIEW** .....................................................................7

**STATEMENT OF THE CASE**................................................................7

**SUMMARY OF THE ARGUMENT** ...................................................13

**ARGUMENT** ..........................................................................................14

**CONCLUSION**......................................................................................33

# <u>TABLE OF AUTHORITIES</u>

## Statutes

28 U.S.C. § 1408 ..................................................................................................5

28 U.S.C. § 1334 ..................................................................................................5

28 U.S.C. § 1331 ..................................................................................................5

11 U.S.C. § 523 ....................................................................................................5

28 U.S.C. § 586(e) ...............................................................................................7

11 U.S.C. § 1326(b) .............................................................................................9

11 U.S.C. § 503(b) ...............................................................................................9

28 U.S.C. § 586(b) .............................................................................................11

11 U.S.C. § 1226(a)(1) .......................................................................................12

11 U.S.C. § 503(b)(2) .........................................................................................12

11 U.S.C. § 330(a) .............................................................................................12

11 U.S.C. § 326(b) .............................................................................................13

11 U.S.C. § 1325(b)(1) .......................................................................................13

## Rules

Fed. R. Bankr. P. 8001(a) ...................................................................................5

Fed. R. Bankr. P. 8002 ........................................................................................5

## Cases

*Miller v. Deutsche Bank Nat'l Tr. Co.,* Civil Action No. 12-cv-03279-PAB, 2013
WL 4776054, at *8 (D. Colo. Sep. 4, 2013) ......................................................6

*In re BDT Farms, Inc.*, 21 F.3d 1019 (10th Cir. 1994).......................................6

*In re Martin*, 500 B.R. 1, 3 (D.Colo.2013) .........................................................7

*Carpenter v. Berkeley Fed. Bank & Tr. FSB (In re Carpenter),* 200 B.R. 47, 48 (D.
Colo. 1996) .........................................................................................................7

*In re Cupit*, 541 B.R. 739, (D. Colo. 2015) .........................................................7

*In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012. .......................................7

*In re Ward*, 132 B.R. 417, 419 (Bankr. D. Neb. 1991) ...........................................9

*In re Rivera,* 268 B.R. 292 (Bankr. D. N.M. 2001) ..................................................9

*In re Acevedo*, 497 B.R. 112 (Bankr. D. N.M. 2013) ..............................................9

*In re Lundy*, No. 15-32271, 2017 WL 4404271, at *4 (Bankr. N.D. Ohio, Sept. 29, 2017) ……………………………………………………………………… 15, 17, 18

*Duncan v. Walker*, 553 U.S. 167, 172, 121 S.Ct. 2120, 2124, 150 L.Ed. 2d 251 (2001) ....................................................................................................................16

*Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1460 (10th Cir. 1997) .............16

*Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716, 723-24, (2011) ....................16

*Lamie vs. U.S. Trustee*, 540 U.S. 526, 534 (2004) .................................................16

*Russello v. United State*s, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) .....................................................................................................................17

*In re Miranda*, 285 B.R. 344, 2001 WL 1538003 at *2 (B.A.P. 10th Cir. Dec. 4, 2001) (nonprecedential) ........................................................................................20

*In re Evans*, No. 19-40193 JMM (Bankr. D. ID., February 13, 2020)...................21

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) ....................................................................................................................24

*Pelofsky v. Wallace*, 102 F.3d 350 (8ᵗʰ Circuit 1996) ...........................................28

*Skidmore v. Swift & Co*., 323 U.S. 134 (1944)......................................................28

*Christensen v. Harris County*, 529 U.S. 576 (2000) ..............................................29

*United States v. Mead*, 533 U.S. 218 (2001) ..........................................................30

*Brown v. Azar*, No. 1:20-cv-03702 (N.D.Ga.) .......................................................31

*KBW Investment Properties LLC v. Azar*, No. 2:20-cv04852 (S.D.Ohio) ............31

*Tiger Lilly LLC v. HUD*, No. 2:20-cv-02692 (W.D.Tenn.) ...................................31

*Auer v. Robbins*, 519 U.S. 452 (1997). .................................................................31

*Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019), ....................................................31

*Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 151-153, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) ...............................................................32

## JURISDICTIONAL STATEMENT

(A)       Basis for the Bankruptcy Court's subject-matter jurisdiction

This appeal arises from a Motion to Disgorge Trustee's Fees filed by the

Debtor, Daniel Richard Doll (hereinafter "Appellant") in a Chapter 13

Bankruptcy case in the United States Bankruptcy Court for the District of

Colorado ("Bankruptcy Court"). The Bankruptcy Court had jurisdiction over

the Chapter 13 Bankruptcy case because the Debtor represented he was eligible

to file within the District of Colorado pursuant to 28 U.S.C. § 1408. The

Bankruptcy Court had jurisdiction over the issue on appeal pursuant to 28

U.S.C. § 1334, because it was a core proceeding arising in and related to a

Chapter 13 Bankruptcy proceeding concerning property of the Appellant and

his estate.


(B)       Basis for the District Court's Jurisdiction

The District Court has jurisdiction over this matter pursuant to Fed. R. Bankr. P.

8001(a), Fed. R. Bankr. P. 8002, 28 U.S.C. § 1331, and 28 U.S.C. § 1334(b).


(C)       Filing Date

The Order Appellant seeks to appeal was entered on February 19, 2021.

Pursuant to Fed. R. Bankr. P. 8002, Appellant's Notice of Appeal was timely

filed on March 5, 2021.

(D)        Appeal from Final Order

The Order at issue is a final order of the United States Bankruptcy Court for

the District of Colorado, which Appellant may appeal as a matter of right:

> [a] party may appeal as of right from the final order
> of a bankruptcy court to a district court. 28 U.S.C. §
> 158(a)(1)… In the bankruptcy context, a court's
> order is final, as opposed to interlocutory, if it
> resolves 'a particular proceeding or controversy
> within the entire bankruptcy proceeding' or
> 'irrevocably decides a dispositive issue of law or the
> rights of any party.' [internal citation omitted]

*Miller v. Deutsche Bank Nat'l Tr. Co.,* Civil Action No. 12-cv-03279-PAB, 2013

WL 4776054, at *8 (D. Colo. Sep. 4, 2013).

## STATEMENT OF THE ISSUES PRESENTED

Whether the Bankruptcy Court erred in relying upon *In re BDT Farms, Inc.*,

21 F.3d 1019 (10th Cir. 1994) in its Order to deny Appellant's Motion to Disgorge

Trustee's Fees.  Given the Tenth Circuit's conclusion in *In re BDT Farms* that 28

U.S.C. § 586(e) is ambiguous, Appellant disagrees with the Bankruptcy Court that

deference to UST's Handbook as to retention of money received by a trustee in a

dismissed and unconfirmed Chapter 13 is correct.

## STANDARD OF REVIEW

In reviewing the decision of the Bankruptcy Court, this United States

District Court for the District of Colorado ("District Court") "functions as an

appellate court and is authorized to affirm, reverse, modify or remand the Bankruptcy Court's ruling." *In re Martin*, 500 B.R. 1, 3 (D.Colo.2013)(citing 28 U.S.C. § 158(a); FED.R.BANKR.P. 8013). The standard of appellate review for a conclusion of law is *de novo*. *Carpenter v. Berkeley Fed. Bank & Tr. FSB (In re Carpenter),* 200 B.R. 47, 48 (D. Colo. 1996). Furthermore, "[t]he Bankruptcy Court's factual findings, including findings regarding intent, are reviewed for clear error." *In re Cupit*, 541 B.R. 739, (D. Colo. 2015), *In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012).

## STATEMENT OF THE CASE

This appeal arises from an Order of the Bankruptcy Court entering judgment in favor of Chapter 13 Trustee, Adam M. Goodman ("Appellee") and against Appellant in Bankruptcy Matter No. 17-20831 MER on February 19, 2021 ("Order.")  The Order addresses the issue before this court, that is, the obligations of a Chapter 13 Trustee with respect to funds paid to the Trustee by a Chapter 13 Debtor whose case is dismissed, prior to confirmation.

Appellant commenced his Chapter 13 proceeding, assigned Case no.: 17-20831 MER with the filing of a voluntary petition on November 20, 2017 ("Petition Date.") Docket #1. Confirmation of Appellant's bankruptcy matter was heavily litigated. After the Bankruptcy Court declined to confirm Appellant's plan, the matter was dismissed on March 6, 2020 ("Dismissal Date," Docket # 146).

Appellee thereafter filed his Final Report and Account on June 2, 2020, Docket #159, reflecting that Appellant paid Appellee $29,900 between the Petition Date and Dismissal Date. On the Dismissal Date, Appellee had a net balance on hand of $2,596.70 (the "Disputed Balance"). Appellee's Final Report and Account reflects that Appellee paid himself the Disputed Balance, relying on 28 U.S.C. § 586(e) and 11 U.S.C. § 1326(a),(b). On the same day Appellee filed his Final Report and Account, Appellant filed his Motion to Disgorge Trustee's Fees. Docket #157. Therein, Appellant disputed Appellee's entitlement to the Disputed Balance. Appellant further requested the Bankruptcy Court order Appellee's fees disgorged.

On February 19, 2021 the Bankruptcy Court entered its Order (Docket # 185) denying Appellant's Motion, finding 28 U.S.C. § 586(e) ambiguous, and that the holding in *In re BDT Farms* required the Bankruptcy Court to defer to the United States Trustee's construction of payments under a Chapter 13 plan as set forth in its Handbook. *See* Order, p. 12. The Bankruptcy Court noted that the majority of courts that have addressed the issue agree with Appellant and have held that a standing trustee may not retain his percentage fee in an unconfirmed and dismissed Chapter 13 case. *See* Order, p. 3. The Bankruptcy Court noted that the court in *In re Ward*, 132 B.R. 417, 419 (Bankr. D. Neb. 1991), held that "[t]he standing trustee's only source of compensation will be from cases that have confirmed plans," relying upon 28 U.S.C.§ 586(e) and 11 U.S.C. § 1326(b). The

Bankruptcy Court also considered the reasoning of other courts that reached similar conclusions where the question of disbursement of payments in a dismissed Chapter 13 case was at issue. In *In re Rivera,* 268 B.R. 292 (Bankr. D. N.M. 2001), the United States Bankruptcy Court for the District of New Mexico held, consistent with *Ward*, that § 1326(b) assumes a prior confirmation, because it requires the trustee to be paid "before or at the time of each payment to creditors under the plan." The court concluded that reading the statute any other way would nullify the exclusivity of § 503(b) as the sole carve-out to returned § 1326(a)(2) payments. Order, at P. 3-4.

In *In re Acevedo*, 497 B.R. 112 (Bankr. D. N.M. 2013), the Bankruptcy Court for the District of New Mexico reconciled the apparent conflict between § 1326 and § 586 by concluding that a "collect and hold" construction best represents congressional intent, whereby a trustee should collect fees as paid under § 586(e)(2), and hold them for further direction pursuant to § 1326(a)(2). Order, at p. 6. Although it observed that the aforementioned Bankruptcy Courts have universally interpreted § 586(e) as unambiguous, the Bankruptcy Court reasoned that it was bound by the precedential effect of *In re BDT Farms*, which was decided by the Tenth Circuit Court of Appeals, and is therefore controlling precedent within the jurisdictional territory of the Bankruptcy Court. Ultimately, the Bankruptcy Court concluded, as did the court in *In re BDT Farms*, that §

586(e) is ambiguous, and that deference to the United States Trustee and the United States Trustee's Handbook is therefore appropriate. *See* Order, p. 12. The Bankruptcy Court stated:

> [t]he Court sees nothing in the current language of the UST Handbook on this specific question which would mandate a different conclusion. Rather, the UST Handbook clearly states the UST's position while recognizing the divergent interpretations of § 586(e) and providing necessary flexibility [footnote omitted.]

Order, p. 11.

Thus, according to the Bankruptcy Court, because the United States Trustee's Handbook permits Trustees to retain the percentage fee in cases of the type at issue, Appellant's Motion to Disgorge Trustee's Fees was denied.

## RELEVANT CODE SECTIONS

28 U.S.C. § 586(b) provides:

> If the number of cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 commenced in a particular region so warrants, the United States trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustees to serve in cases under such chapter. The United States trustee for such region shall supervise any such individual appointed as standing trustee in the performance of the duties of standing trustee.

28 U.S.C. § 586(b).

28 U.S.C. § 586(e), entitled "Duties," provides:

> (2) [The standing trustee] shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund [the statutorily required amounts] . . . .

28 U.S.C. § 586(e)(2).

11 U.S.C. § 1326(a), entitled "Payments," provides:
> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan . . . in the amount— (A) proposed by the plan to the trustee; . . . . (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid out and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326 (a)(1).

11 U.S.C. § 1226(a) provides:

> Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any

such payments to the debtor, after deducting— (1) any unpaid claim allowed under section 503(b) of this title; and (2) if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.

11 U.S.C. § 1226(a)(1). [Emphasis provided.]

11 U.S.C. § 503(b) provides:

"…compensation and reimbursement awarded under section 330(a)…

11 U.S.C. § 503(b)(2).

11 U.S.C. § 330(a) provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103— (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B)reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A),(B).

11 U.S.C. § 326(b) provides:

(b) In a case under subchapter V of chapter 11 or chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for

the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

11 U.S.C. § 326(b).

11 U.S.C. § 1325(b) provides:

(b) (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan ….

11 U.S.C. § 1325(b)(1).

## SUMMARY OF THE ARGUMENT

Appellant filed for relief under Chapter 13 on November 20, 2017.

Appellant filed three proposed plans. Appellee filed four objections to confirmation of Appellant's plans. Appellant's case was dismissed on March 6, 2020. During the course of the confirmation process, per the proposed plans, Appellant paid Appellee $29,900 representing Chapter 13 plan payments. After Appellant's undersigned counsel filed its Application for Administrative Expenses, an order allowing fees entered on May 4, 2020.  Docket #153. Appellee retained $2,596.70 of the $29,900 paid to him by Appellant, and distributed the remainder of the funds. Appellant maintains that a Chapter 13 trustee may not retain statutory "percentage" fees in Chapter 13 cases that are dismissed prior to confirmation. 11 U.S.C. § 1326(a)(2) offers no authority to pay trustee fees and expenses from an unconfirmed and dismissed Chapter 13 case. Providing fees and expenses to

trustees in unconfirmed and dismissed Chapter 13 cases disincentivizes trustees to assist in the expeditious and fair confirmation of feasible plans.  Further, Appellant respectfully disagrees with the Bankruptcy Court's conclusion that the UST's Handbook offers guidance as to the disposition of plan payments in a dismissed Chapter 13 plan prior to confirmation.  Just the opposite.  The Handbook defers to controlling law in the district, which does not exist.

## ARGUMENT

At the outset, Appellant states that he agrees with substantially all of the findings of fact and conclusions of law from the Bankruptcy Court.  Appellant agrees with the trial court that the overwhelming number of cases that have addressed the issue of retention of the percentage fee in dismissed and unconfined cases side with Appellant, that is, the monies do not belong to the trustee.

"Determining whether a standing Chapter 13 trustee is entitled to a statutory fee in a case dismissed before confirmation of the debtor's plan requires construction of two statutes, specifically, 11 U.S.C. § 1326 and 28 U.S.C. § 586(e). *In re Lundy*, No. 15-32271, 2017 WL 4404271, at *4 (Bankr. N.D. Ohio, Sept. 29, 2017). The competition between the two statutes may be summarized as the following: does § 1326(a)(2) require a Chapter 13 trustee to disgorge all fees collected when a plan is dismissed before confirmation, or does § 586(e) entitle the trustee to retain his compensation? As to this question, there is a split among

bankruptcy courts.[1]  The majority of courts that have addressed the issue weigh in favor of the former. In discerning which statute controls, a court's "task is to construe what Congress has enacted." *Duncan v. Walker*, 553 U.S. 167, 172, 121 S.Ct. 2120, 2124, 150 L.Ed. 2d 251 (2001).

> The starting point in any case involving statutory construction is the language of the statute itself. *United States v. Thompson*, 941 F.2d 1074, 1077 (10th Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992). 'When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances.' Id. (quoting *Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir.1987)).

*Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1460 (10th Cir. 1997).

---

[1] See *In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014) (fees ordered disgorged); *In re Acevedo*, 497 B.R. 112 (Bankr. D.N.M. 2013) (fees ordered disgorged); *Matter of Ward*, 132 B.R. 417 Bankr. D. NE. 1991) (Trustee's request for fees per 11 U.S.C. § 326(b) denied); *In re Rivera*, 268 B.R. 292, 293 (Bankr. D.N.M. 2001) (Trustee's motion for fees per 28 U.S.C. § 586 denied); *In re Miranda*, 285 B.R. 344 (10th Cir. BAP 2001)(Trustee request for fees denied); *but see In re Nardello*, 514 B.R. 105 (D.N.J. 2014) (Trustee paid third party funds pre-confirmation per court order. Case dismissed prior to confirmation. Trustee awarded fees. Court rationalized that a creditor was paid pre-dismissal.); *In re Antonacci*, No. BK-S-08-23349-LBR (Bankr. D. Nev. Dec. 27, 2011) (Trustee allowed fees. Opinion is two pages long, contains no analysis*); In re Crespin*, case no.: 17-11234 ta13, (D.N.M. May 23, 2019) (Trustee motion for fees denied).

When interpreting a federal statute, the U.S. Supreme Court has instructed that the starting point is the language of the statute itself. *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716, 723-24, (2011) (quoting *United States vs. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)). Where the statutory language is plain, "the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Lamie vs. U.S. Trustee*, 540 U.S. 526, 534 (2004).  In the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its 'drafters'…the intention of the drafters, rather than the strict language, controls." *In re Lundy*, at *8 *citing* (*Ron Pair Enterprises, Inc*., 489 U.S. at 242-43).

Furthermore, when the statute's language is not clear, courts may resort to legislative history to ascertain its meaning. *Id*. (*citing United States v. Boucha*, 236 F.3d 768, 774 (6th Cir.2001). When determining the clarity or ambiguity of statutory language, courts should not read a statute in isolation. Id. "Statutory construction is a 'holistic endeavor.' 'A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'" *Id*. (*citing Koons Buick Pontiac GMC, Inc. v.*

16

*Nigh*, 543 U.S. 50, 60 (2004) (internal citations omitted). These are the guiding principles that govern the analysis of 28 U.S.C. 583(e) and 11 U.S.C. §1326(a).

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United State*s, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Relevant to the instant inquiry is § 1226(a), and its provision for allowing a fee to be paid to the trustee in an unconfirmed and dismissed Chapter 12 proceeding. (See § 1226(a)(1), (2).) *Collier on Bankruptcy* offers perspective as to the issue. It states "the authority granted standing Chapter 12 trustee to deduct a percentage fee is unique to Chapter 12. A Chapter 13 plan is denied confirmation, a standing Chapter 13 trustee is authorized to pay unpaid administrative claims but is not authorized to deduct the standing trustee's percentage fee." 8 *Collier on Bankruptcy* ¶ 1226.01 (Richard & Henry J. Sommer, (16th Ed.).

Likewise, the court in *In re Lundy* focused on the difference between the two chapters.

> Congress knows how to provide for allowance of a
> standing trustee's percentage fee in cases where a plan is
> not confirmed. Section § 1226(a) was enacted in 1986,
> two years after Congress added what is now § 1326(a).

>At that time, § 1326 was also amended . . . yet Congress
>
>did not include a similar provision in § 1326(a).

*In re Lundy*, 2017 WL 4404271, at *8. (internal citations omitted).

Thus, a Chapter 12 trustee has available the authority granted by § 1226(a)(2) to retain fees paid during the course of a Chapter 12 case, ultimately dismissed prior to confirmation. A Chapter 13 trustee does not have such explicit statutory authority. Further, while § 586(e) suggests a trustee has an avenue to receive payment from a dismissed and unconfirmed case (i.e., "[[t]he standing trustee] shall collect such percentage fee from all payments received by such individual under plans can be paid ...), the argument is unavailing. To permit retention of fees ignores the more specific authority contained in § 1226(a)(2) and renders the language therein meaningless. And while § 1326(b) authorizes a trustee to "collect" payments, it is silent as to keeping those payments in an unconfirmed case.

Congressional intent in promulgating § 1226(a)(2) is easily inferred-- Congress desired to compensate Chapter 12 trustees regardless of whether the plan is confirmed. No such intent is found in Chapter 13, as it does not extend the same accommodation to a Chapter 13 trustee. The canon of construction, *expressio unius, exclusio alterius*, is applicable to this analysis of statutory construction and intent.

Section 1326(a)(2) allows a deduction for allowed § 503(b) claims. Per § 503(b), claims include "compensation and reimbursement awarded under section 330(a) ..." *See* § 503(b)(2). In turn, § 330(a) permits the court to award compensation and expenses to trustees, subject to § 326. Moving to § 326, a court "may not allow compensation for services or reimbursement of expenses of the United States Trustee or of a standing trustee appointed under section 586 (b) of title 28 ..." As § 586(b) appoints a Chapter 13 trustee, allowance of fees and costs under § 503(b)(2) is not available. As to the propriety of retaining funds in dismissed and unconfirmed cases, in *In re Miranda*, 285 B.R. 344, 2001 WL 1538003 at *2 (B.A.P. 10th Cir. Dec. 4, 2001), a Chapter 13 trustee appealed an order from the bankruptcy court denying allowance of fees in several cases dismissed or converted prior to confirmation. The BAP addressed the difference between Chapter 12 and 13 cases. The *Miranda* court noted that while a Chapter 13 trustee is authorized to pay unpaid administrative claims, that trustee is not authorized to deduct her percentage fee. This, the *Miranda* court noted, is a crucial difference between Chapter 12 and Chapter 13.

> If a debtor is required to make preconfirmation payments,
> the debtor should not have to fund the standing trustee's
> fees out of those payments when the plan is not confirmed
> and the case is converted or dismissed. In fact, in cases

involving a long delay in confirming the plan, such a rule

could be punitive to the debtor.

*In re Miranda*, 285 B.R. 344, 2001 WL 1538003 at *2 (B.A.P. 10th Cir. Dec. 4,

2001) (nonprecedential).

Similar to trustees in Chapter 12, Congress intended that trustees in an

unconfirmed and dismissed Chapter 11, subchapter V case should be paid.  If the

service of a standing trustee is terminated by dismissal or conversion of the case or

upon substantial consummation of a consensual plan under § 1181(a), 28 U.S.C. §

586(e)(5) provides that the court "shall award compensation to the trustee

consistent with the services performed by the trustee and the limits on the

compensation of the trustee established pursuant to [28 U.S.C. § 586(e)(1)]."

Similarly, with regard to a non-standing subchapter V trustee, § 330(a) permits the

court to award compensation to trustees. Sections 326(a) and (b) impose limits on

compensation of trustees. Within subchapter V, and the amendments to the

bankruptcy code, § 330(a) was not amended, but §§ 326(a) and (b) were. Under a

"plain meaning" interpretation of these provisions as amended, a non-standing

subchapter V trustee is entitled to "reasonable compensation for actual, necessary

services rendered" and "reimbursement for actual, necessary expenses" under §

330(a).  Sections 326(a) and (b) do not impose any limits on compensation.

In a thorough discussion of the present issue, in the case of *In re Evans*, Case No. 19-40193 JMM (Bankr. D. ID., February 13, 2020), Chief Judge Meier discussed the interplay of the salient code sections. Section 1326(b), the court noted, requires the trustee to pay the trustee's percentage fee before or at the time of each payment to creditors under the plan. Yet § 1326(a)(2) only allows the trustee to pay creditors after a plan is confirmed. "If the trustee cannot pay creditors until a plan is confirmed pursuant to § 1326(a)(2), then § 1326(b) is not operative until a plan is in effect." *Evans*, at 10, citing *In re Rivera*, 268 B.R. 292, 294 (Bankr. D.N.M. 2001).

The *Evans* court goes on to note that §§ 1226(b)(2) and 1326(b)(2) contain almost identical language. Yet § 1226(a)(2) expressly allows a trustee to deduct a percentage fee in unconfirmed cases, while § 1326(b)(2) stands idle until a plan is in effect. Such an interpretation gives effect to the interplay between other statutes as well. Section 586(e)(2) directs the trustee to collect payments under a pending plan and § 1326(a)(2) directs a trustee when and how to disburse payments, both before and after confirmation, including the trustee's fee. Id., at 11. The *Evans* court then considers and ultimately disposes of arguments from the U.S. Trustee as to the unavailability of § 586 to support retaining a trustee's fee in an unconfirmed and dismissed Chapter 13 case. *Id.*, at 11-12. The parties in *In re Evans* (i.e., Debtor and the U.S. Trustee) offered a panoply of arguments regarding whether a

Chapter 13 trustee is entitled to keep a fee in an unconfirmed and dismissed Chapter 13 case. As a result, the *Evans* court offers an exhaustive examination of the statutes and case law.

The Executive Office for the United States Trustees, within the United Stated Department of Justice, promulgates the *Handbook for Chapter 13 Standing Trustees* ("Handbook").[2] It states that a Chapter 13 trustee is authorized to collect his fees upon receipt of a payment, but, "[i]f the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal[.]" *Handbook* at pp. 2-3 to 2-4. The Handbook acknowledges, then, that jurisdictions may differ with respect to whether the trustee may retain the statutory fee or return it in light of a case dismissed before confirmation. In its Order of February 19, 2021, the Bankruptcy Court found that

> [t]here is no controlling law in the District of Colorado or the Tenth Circuit which would reverse the UST's default position.  Under this Court's interpretation of *BDT Farms*, the controlling law in this Circuit appears consistent with the UST's position.

Order, p. 11.

---

[2] The Handbook is found at:
https://www.justice.gov/sites/default/files/ust/legacy/2015/05/05/Handbook_Ch13_Standing_Trustees_2012.pdf

What, then, is the UST's position per its Handbook?  It states that deference should occur to **existing case law in those districts that have addressed the issue.**  The Handbook's position may be summarized in essence, "when in Rome, do as the Romans do."  While there is no Tenth Circuit case on point, there are decisions in lower courts within the Tenth Circuit that offer guidance.[3]  Appellant maintains that in the absence of direction from the Tenth Circuit, the Bankruptcy Court incorrectly assumes that the Tenth Circuit would give deference to the UST's Handbook as to the issue before the court.  Appellant argues that the Bankruptcy Court's deference to the UST Handbook should be reviewed *de novo* and is reversible error.

## THE PROBLEM WITH BDT FARMS AND THE CHEVRON DOCTRINE

---

[3] *See In re Rivera*, 268 B.R. 292 (Bankr. D. N.M. 2001) (The standing chapter 13 trustee's percentage fee is not an administrative claim within the meaning of § 503(b).  Rivera rejects the interpretation that § 1326(b) authorizes a trustee to retain the percentage fee.); *In re Miranda*, 285 B.R. 344 (10th Cir. BAP 2001) (unpublished)(finding that § 1326(a)(2) unambiguously calls for the return of all payments except for administrative claims under § 503(b)).  *Miranda* refers to the parallel chapter 12 provision (i.e., § 1226(a)) which permits the standing trustee to retain a percentage fee in dismissed and unconfirmed plans; *In re Acevedo*, 497 B.R. 112 (D.N.M. 2013) (an *en banc* decision, the court found a conflict between § 1326(a)(1) and § 586(e)(2), the court held the "best, most harmonious reading of the two statutes is that § 586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while § 1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, …" *Id*. at 122.

The Bankruptcy Court cites to *BDT Farms'* approach with its interpretation of the ambiguous § 586 language, and its deference to the UST Handbook. In doing so, it cites *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  In *Chevron*, the Supreme Court sets forth a test when a court should defer to an agency's interpretation of a statute.  *Chevron* holds that judicial deference is appropriate where the agency's interpretation is not unreasonable, and where Congress has not spoken directly to the discreet question at issue.

The Bankruptcy Court notes that *Acevedo* addressed the issue as presented in *BDT Farms*, that is—giving *Chevron* deference to the UST Handbook regarding the retention of a percentage fee by the trustee. *Acevedo* distinguishes the decision in *BDT Farms* by finding that § 1326 --and not § 586-- is on point.   That is, the former established when and under what circumstances the trustee may deduct and retain the percentage fee. The *Acevedo* court, in so holding, did not find § 1326 ambiguous.

The issue before the Tenth Circuit in *BDT Farms* was the calculation of the standing Chapter 12 trustee's fee under 28 U.S.C. § 586(e).  Concluding that that section is ambiguous, the court deferred to the UST Handbook.  Significantly, *BDT Farms* peripherally involved § 1326.

As previously discussed, § 1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation.  Section 586

24

addresses the trustee's obligation to collect and hold funds.  Clearly, § 1326(a)(2)

is instructive, and offers guidance, as to the disposition of monies in a dismissed

and unconfirmed Chapter 13.  While *BDT Farms* references § 1326 in passing, its

focus was on § 586.  And for good reason.  The issue before the court in *BDT*

*Farms* was the calculation of compensation to a Chapter 12 trustee.  The court did

not have before it the question whether a Chapter 13 trustee can retain a percentage

fee in a dismissed and unconfirmed Chapter 13 case. *BDT Farms* did not opine that

§ 1326(a)(2) is ambiguous, as it had no need to go down that path.  *BDT Farms*

had before it a different issue—calculating the percentage of fees to be paid in

Chapter 12 cases.  Further, there is nothing within *BDT Farms* that suggests a

*Chevron* deference as to § 1326 to the UST Handbook.

The Bankruptcy Court notes that *Acevedo* does not follow *BDT Farms*.

*Acevedo's* focus and distinction on § 1326 and not § 586, the Bankruptcy Court

states, is "tautological."  Appellant respectfully disagrees.  Appellant submits that

*Acevedo's* approach to the interplay between §§ 1326 and 586 is instructive and

well-reasoned. As to *BDT Farms'* rejection of *In re Edge*, 122 B.R. 219 (D. Vt.

1990), both *BDT Farms* and *Edge* focus on interpreting § 586.

The Bankruptcy Court departs from *Acevedo's* conclusion, where *Acevedo*

finds *BDT Farms* distinguishable.  Instead, the Bankruptcy Court concludes that

*BDT Farms* finding that § 586 (e) is ambiguous, and that the inquiry need not

focus on § 1326.  As such, deference is tossed to the government agency that promulgates the handbook.  The Bankruptcy Court acknowledges criticism of the mandating *Chevron* deference and cites *to In re Nardello*, 514 B.R. 105 (D.N.J. 2014).

The Bankruptcy Court goes on to state:

> [i]n any event, *BDT Farms* expressly found the UST's construction of § 586(e) reasonable [footnote omitted].  The Court sees nothing in the current language of the UST Handbook on this specific question which would mandate a different conclusion.  Rather, the UST Handbook clearly states the UST's position while recognizing the divergent interpretations of § 586 (e) and providing flexibility. [footnote omitted].

Order, p. 11.

And what is that position?

> The standing trustee is authorized to collect the percentage fee upon receipt of the payment. The trustee must transfer the percentage fee to the operating expense account at least monthly. If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt **if there is controlling law in the district requiring such reversal or if (after consultation with the United States Trustee) the standing trustee determines that there are other**

**grounds for concern in the district.** If the standing trustee determines that

all or part of the payment may not be a payment under the plan, the standing

trustee may delay collection of the percentage fee on that payment or part of

a payment until there is a determination of that issue. [Policy change

effective October 1, 2014.]

UST Handbook, p. 2-4. [Emphasis provided.]

Appellant agrees with the Bankruptcy Court that there is no "controlling

law" in this district.  That is, there are no Tenth Circuit cases that have addressed

this discreet issue—can a Chapter 13 trustee retain a percentage fee in a dismissed

and unconfirmed case?  And as the Bankruptcy Court points out, the Handbook

recognizes divergent interpretations.  Likewise, the record contains no evidence

that the standing trustee has determined there are "other grounds for concern."

To Appellant, the question becomes—would the Tenth Circuit apply the

same reasoning—and deference--within *BDT Farms* to the question before this

court?  And what deference would that be? As the Handbook directs the trustee to

defer to controlling law in the district --but *BDT Farms* is not controlling law.

Since *BDT Farms* was decided in 1994, the *Chevron* doctrine has

diminished in standing.  In *Pelofsky v. Wallace*, 102 F.3d 350 (8th Circuit 1996),

the court addressed the similar issue in *BDT Farms*, that is, the percentage fee for a

27

Chapter 12 trustee. "However, unlike the Tenth Circuit, we do not accord the UST *Chevron* deference." *Pelofsky* at 355. In a footnote, the 8th Circuit writes:

> [t]he debtors correctly point out that *Chevron* deference is only appropriate '[w]hen Congress ... has delegated policy making authority to an administrative agency.' *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991). In this case, the debtors do not deny that section 586 delegates authority to the Attorney General to set the percentage fee, but argue that there is no showing that the Attorney General delegated authority to the EOUST. We do not resolve the delegation issue. Even assuming proper delegation, for reasons to be stated, in the circumstances of this case we believe no *Chevron* deference is due to the UST.

*Id.* at 356.

Since the Supreme Court's decision in *Chevron*, the Court has narrowed its scope. Known as the *Skidmore* deference, named after the 1944 U.S. Supreme Court decision of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), in the case of *Christensen v. Harris County*, 529 U.S. 576 (2000), the Court distinguishes the *Chevron* deference. Unlike *Chevron*, which requires a federal court to defer to an agency's interpretation of an ambiguous statute if the interpretation is considered reasonable, the *Skidmore* deference allows a federal court to determine the appropriate level of deference for each case based on the agency's ability to support its position. Writing for the majority, Justice Thomas' found that *Chevron* deference is binding for agency rules developed through administrative rulemaking

28

while *Skidmore* deference is applied to agency interpretations "such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines." *Id.* at 587.  These types of agency interpretations are generally issued in the form of guidance documents, which are not required to be developed through the rulemaking process.[4]

In *Christensen v. Harris County*, 529 U.S. 576 (2000) the Court held that only the agency interpretations reached through formal proceedings with the force of law, such as adjudications, or notice-and-comment rulemaking, qualify for *Chevron* deference, while those contained in opinion letters, policy statements, agency manuals, or other formats that do not carry the force of law are not warranted a *Chevron* deference.  In such cases, the Court may give a slightly less deferential treatment to the agency's interpretation, giving a persuasive value under the Court's "Skidmore deference" analysis.

*Post-Chevron*, the Supreme Court held in *United States v. Mead*, 533 U.S. 218 (2001), that the *Chevron* framework generally applies when a court reviews an agency's interpretation of a statute if, as the Supreme Court says, "it appears that Congress delegated authority to the agency generally to make rules carrying the

---

[4] *The Georgetown Law Journal,* "The Continuum of Deference: Supreme Court Treatment of Agency Statutory Interpretations from Chevron to Hamdan," January 1, 2008..

force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.*, at 226-227.

As to the record on appeal, there is no evidence that the UST Handbook's interpretation of the percentage fee was arrived at via formal proceedings or the rulemaking process. Likewise, there is no evidence that Congress delegated authority to the UST to promulgate rules regarding the retention of a percentage fee. Appellant argues that the UST Handbook is subject to the *Skidmore* analysis, if any, and with that lessor level of deference.

Decisions that have reviewed the *Chevron* doctrine since *BDT Farms* was decided have uniformly concluded that interpretive guidance documents that are not promulgated through notice and comment or other formal rulemaking are not entitled to the strongest form of deference (i.e., the "Chevron deference.") These cases include *Brown v. Azar*, No. 1:20-cv-03702 (N.D.Ga.); *KBW Investment Properties LLC v. Azar*, No. 2:20-cv04852 (S.D.Ohio), and *Tiger Lilly LLC v. HUD*, No. 2:20-cv-02692 (W.D.Tenn.).

An even lesser form of deference to agency interpretations is known as the "Auer deference." Auer applies to agency interpretations of their own regulations. *See Auer v. Robbins*, 519 U.S. 452 (1997). The basic concept of *Auer* deference is that "the agency that promulgated a rule is in the 'better position [to] reconstruct'

its original meaning." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019), *citing Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 152 (1991).

> We have explained *Auer* deference (as we now call it) as rooted in a presumption about congressional intent—a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities. See *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 151-153, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). Congress, we have pointed out, routinely delegates to agencies the power to implement statutes by issuing rules. See *id.,* at 151, 111 S.Ct. 1171. In doing so, Congress knows (how could it not?) that regulations will sometimes contain ambiguities. See *supra,* at 2410. But Congress almost never explicitly assigns responsibility to deal with that problem, either to agencies or to courts. Hence the need to presume, one way or the other, what Congress would want.

*Kisor*, at 2412.

Assuming the ambiguity found in § 586 by the Tenth Circuit in *BDT Farms*, would it conclude that Congress would want the trustee to retain a percentage fee in a dismissed and unconfirmed Chapter 13?  Would it give deference, in *Chevron* fashion, given the subsequent Supreme Court decisions?  Would it defer to Congress' statutory framework as to remunerating trustees in dismissed and

unconfirmed Chapter 12 and subchapter V cases (i.e., 11 U.S.C. §§ 326 and 1226), but not in Chapter 13 cases?  Would it conclude that § 1326 is not ambiguous and on point as to the disposition of funds in a dismissed and unconfirmed Chapter 13 case?

## **CONCLUSION**

Within §§ 326(b) and 1226(a)(1), Congress clearly knows how to offer remuneration to a trustee when it wants to. Congress decided to not compensate a Chapter 13 trustee in the same manner as trustees in subchapter V or Chapter 12 cases.  Perhaps an incentive for a Chapter 13 trustee to get a case to confirmation? In any event, Congress, as to allowance of the percentage fee in Chapter 13, has spoken.

The Bankruptcy Court erred when it denied the Appellant's Motion to Disgorge the Appellee's Fees. The Court's reliance upon *BDT Farms*, the *Chevron* doctrine, and ultimately the UST Handbook is, respectfully, misplaced.

The facts are not in dispute.  The question before this court is a legal one. As such, the standard of review is *de novo*.

As such, Appellant argues that the Bankruptcy Court's Order of February 19, 2021 must be reversed for clear error.  Appellant requests an order enter directing the Appellee to return the sum of $2596.70 to the Appellant in this case.

For these reasons, the Appellant respectfully requests that this court reverse the

Bankruptcy Court denying his Motion to Disgorge the Trustee's Fee.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Appellant requests oral argument to the extent that this Court deems it helpful to
clarify matters raised in the briefs.

## CERTIFICATE OF COMPLIANCE
### Certificate of Compliance with Type-Volume Requirements, Typeface Requirements, and Type Style Requirements

The undersigned counsel hereby certifies that with respect to the foregoing:
1. This filing complies with the page limitation of Fed.R.Bankr.P. 8015(a)(7) as the
foregoing **OPENING BRIEF OF APPELLANT DANIEL DOLL** is
proportionally spaced and contains less than 30 pages.
2. This filing complies with the typeface requirements ofFed.R.Bankr.P.8015(a)(5)
and the type style requirements of Fed.R.Bankr.P.8015(a)(6), because this filing
has been prepared in a proportionally spaced typeface using Microsoft Word
Office 365 in 14-point Times New Roman font.

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **OPENING BRIEF OF APPELLANT
DANIEL DOLL** as submitted in digital form via the United States District Court
for the District of Colorado's ECF/CM system, is an exact copy of the written
document filed with the Office of the Clerk. The digital submission has been
scanned for viruses with Avast Antivirus, version 210526-24, updated May 27,
2021, and according to the program, is free of viruses. In addition, I certify to have
made all required privacy redactions.

Dated:  May 27, 2021

/s/ Stephen E. Berken, Esq.
**BERKEN CLOYES P.C.**
1159 Delaware St.
Denver, CO 80204
Tel: (303) 623-4357
Facsimile: (720) 554-7853
Email: stephenberkenlaw@gmail.com
*Counsel for Appellant Daniel Richard Doll*

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2021, a true and accurate.
copy of the foregoing **OPENING BRIEF OF APPELLANT DANIEL RICHARD DOLL** was filed and served via CM/ECF to the following:

United States Trustee's Office
Byron G. Rodgers Federal Building
1961 Stout Street, Suite 12-200
Denver, CO 80294

Chapter 13 Trustee Adam M. Goodman
PO Box 1169
Denver, CO 80201

Daniel Richard Doll
1366 W. Spruce Ct.
Rifle, CO 81650-3709

*/s/ Stephen E. Berken*