# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 23-cv-01888-REB
(Appeal from Bankruptcy Case No. 22-012455-TBM;
Adv. Proc. 22-01258-TBM)

IN RE:

CHRISTOPHER PATRICK BOYD,

Debtor.

_____

HEMP RECOVERY COMPANY, LLC,
Plaintiff / Appellee,
v.
CHRISTOPHER PATRICK BOYD,
Defendant / Appellant.

_____

## APPELLANT'S RESPONSE TO APPELLEE'S ANSWER BRIEF
_____

On appeal from Bankruptcy Adversary Proceeding 22 – 01258 TBM before the
United States Bankruptcy Court for the District of Colorado.


Dated: December 29, 2023

Respectfully submitted by:
Stephen E. Berken, Esq.
**BERKEN CLOYES P.C.**
1159 Delaware St.
Denver, CO 80204
Tel: (303) 623-4357
Facsimile: (720) 554-7853
Email: stephenberkenlaw@gmail.com
*Counsel for Appellant Christopher Boyd*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS........................................................................2

TABLE OF AUTHORITIES ..............................................................3

JURISDICTIONAL STATEMENT .....................................................7

    (A)      Basis for the Bankruptcy Court's subject-matter jurisdiction ….…....7

    (B)      Basis for the District Court's Jurisdiction  ………………………….7

    (C)      Filing Date ………………………………………………………….  7

    (D)      Appeal from Final Order  …………………………….……………... 7

STATEMENT OF THE ISSUES PRESENTED.....................................7

STANDARD OF REVIEW ..............................................................8

STATEMENT OF THE CASE..........................................................9

SUMMARY OF THE ARGUMENT ..................................................9

ARGUMENT ..............................................................................16

CONCLUSION ............................................................................29

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 523(a)(2) ............................................................... 8-10, 15-17

11 U.S.C. § 727 .............................................................................. 8, 15

11 U.S.C. § 1141 ............................................................................ 8, 15

11 U.S.C. § 1228(a) ………………………………………………… 8, 15

11 U.S.C. § 1228(b) ………………………………………………… 8, 15

11 U.S.C. § 1328 ……………………………………………………7

11 U.S.C. § 1328 (b)……………………………………………….....8, 15

28 U.S.C. § 151(a)…………………………………………………….22

28 U.S.C. § 158(a) ........................................................................8, 24

28 U.S.C. § 1328

………………………………………………………………………..8

28 U.S.C. § 1334

………………………………………………………………………..6

28 U.S.C. § 1408 ……………………………………………………6

Bankruptcy Act of 1978, Pub. L. No. 95–598, 92 Stat. 2549…………………..25

Colo.Rev.Stat.  § 38-22-102……………………………………………..…..21

**Rules**

Fed. R. Bankr. P. 7017 ...................................................................21

Fed. R. Bankr. P. 8001(a) ............................................................5

Fed. R. Bankr. P. 8002 ..................................................................5 ,6

Fed.R.Bankr.P. 8013………………………………………………8

Fed.R.Bankr.P. 8015(a)(5)………………………………….………  28

28Fed.R.Bankr.P. 8015(a)(6)……………………………………..…   28

Fed.R.Bankr.P. 8015(a)(7)……………………………………..…   28

Fed.R.Civ.P. 12(h) …………………………………………………..27

Fed.R.Civ.P. 17……………………………………………………..23

Colo.R.Civ. P. 8 ……………………………………………………24

**Cases**

*Allen v. Wright*, 468 U.S. 737 …………………………………………..24

*Axelrod v. New York State Teachers' Retirement System*,
54 A.D.2d 827(3rd Dept 1988)…………………………………………..27
28

*Bebo Constr. Co. v Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 ……….……..18

*Carpenter v. Berkeley Fed. Bank & Tr. FSB (In re Carpenter)*,
200 B.R. 47, 48 (D. Colo. 1996)  ………………………………….…..8

*Community Board 7 of Borough of Manhattan v. Schaffer*, 84 NY2d 148……..23

*In re Cupit*, 541 B.R. 739, (D. Colo. 2015) …………………………..………8

*Davis v. FEC*, 554 U.S. 724  ………………………………………..…..23

*Deutsche Bank Nat'l Trust Co. v. Barwick-Bissat*,
2015 NY Slip Op 30225 (2015)………………………………..…………28

*Foster v. Center Tp. Of LaPorte County*, 798 F.2d 237 ………………..…...23

*In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012). ………….…………8

*In re Joelson*, 427 F.3d 700, 714 (10th Cir. 2005 ………………………...17
21, 22

*Hollingsworth v. Perry*, 570 U.S. 693, 705 …………………………………23

*Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir.2002   …………24

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752 (2018)…………….22

*Lujan v. Defs. of Wildlife*, 504 U.S. 555   …………………………………………..25

*Matter of Eaton Assocs. v Egan*, 142 A.D.2d 330, 334 …………………………28

*Miller v. Deutsche Bank Nat'l Tr. Co.,* Civil Action No. 12-cv-03279-PAB, 2013 WL 4776054, at *8 (D. Colo. Sep. 4, 2013)………………………………………..8

*In re Martin*, 500 B.R. 1, 3 (D.Colo.2013 ………………………………………8

*Mo's Express, LLC v. Sopkin*, 441 F.3d 1229 (10th Cir. 2006) ……………..…24

*Murray v. State Liquor Authority*, 139 AD2d 461 (1st Dept 1988) ……………27

*Osprey, Inc. v. Cabana Ltd. Partnership*, 532 S.E.2d 269  (S.C. 2000) ……   23

*Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508………………22

*In re Riggle*, 389 B.R. 167 (D. Colo. 2007 …………………………………...18, 19

*Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) …………………………...24

*District of Columbia* Court of Appeals, 460 U.S. 462 (1983)………………...23

*Hollingsworth v. Perry*, 570 U.S. 693 ………………………………….………26

*Schlesginger v. Reservists Comm. To Stop the War, 418 U.S. 20.8* …………23

*Spokeo, Inc. v. Robin*, 136 S.Ct. 1540 ……………………………………...26, 27

*Stark v. Goldberg*, 297 AD2d 203 (1st Dept 2002 ……………………………28

*In re Thomas*, 387 B.R. 808 (D. Colo. 2008) ……………………………….. 23

*Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645………………………26

*Wachovia Securities, LLC v. Loop Corp.*, 726 F.3d 899 ………………..…28

*In re Wallace,* 840 F.2d 762 (10th Cir. 1988) ………………………………..20

*Wells Fargo v. Mastropaolo*, 42 A.D.3d 239 (2007), ………………….…28

**Treatises**

*Wright & Miller's Federal Practice and Procedure* ……………………………26, 28

14 C.J.S. *Champerty and Maintenance* § 17 …………………………………23

14 Am.Jur.2d *Champerty and Maintenance* § 7. ……………………………..23

**Court Rules**

21 CJS, Courts, §§ 108-110, 116 …………………………………………..27

## JURISDICTIONAL STATEMENT

(A)      Basis for the Bankruptcy Court's subject-matter jurisdiction

This appeal arises from an order for summary judgment for Hemp Recovery Company (hereinafter "Appellee") and disposition of the adversary proceeding against Christopher Boyd (hereinafter "Appellant") in a Chapter 13 Bankruptcy case in the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court"). The Bankruptcy Court had jurisdiction over the Chapter 13 Bankruptcy case because the Debtor represented he was eligible to file within the District of Colorado pursuant to 28 U.S.C. § 1408. The Bankruptcy Court had jurisdiction over the issue on appeal pursuant to 28 U.S.C. § 1334, because it was a core proceeding arising in and related to a Chapter 13 Bankruptcy proceeding concerning the dischargeability of a debt.

(B)      Basis for the District Court's Jurisdiction

The District Court has jurisdiction over this matter pursuant to Fed. R. Bankr. P. 8001(a), Fed. R. Bankr. P. 8002, 28 U.S.C. § 1331, and 28 U.S.C. § 1334(b).

(C)      Filing Date

The Order Appellant seeks to appeal is a judgment for Appellee entered July 10, 2023. Pursuant to Fed. R. Bankr. P. 8002, Appellant's Notice of Appeal was timely filed on July 24, 2023.

(D)      Appeal from Final Order

The Order at issue is a final order of the United States Bankruptcy Court for the District of Colorado, which Appellant may appeal as a matter of right:

> [a] party may appeal as of right from the final order of a bankruptcy court to a district court. 28 U.S.C. § 158(a)(1)… In the bankruptcy context, a court's order is final, as opposed to interlocutory, if it resolves 'a particular proceeding or controversy within the entire bankruptcy proceeding' or 'irrevocably decides a dispositive issue of law or the rights of any party.' [internal citation omitted]

*Miller v. Deutsche Bank Nat'l Tr. Co.,* Civil Action No. 12-cv-03279-PAB, 2013 WL 4776054, at *8 (D. Colo. Sep. 4, 2013).

## STATEMENT OF ISSUES

1. Whether the bankruptcy court erred in its application of collateral estoppel. In particular, whether the issue before the bankruptcy court was identical to an issue actually litigated and adjudicated in the prior proceeding?

2. Whether the use of verbal statements regarding financial condition of the Appellant, relied upon in the state court, were admissible evidence in the bankruptcy court's finding that collateral estoppel applies in the Appellee's motion for summary judgment?

3. Whether the bankruptcy court erred in its interpretation of the proper party-in-interest?

8

4.  Whether the failure to assert champerty in the state court proceeding

precluded its assertion in the bankruptcy adversary case?

## STANDARD OF REVIEW

In reviewing the decision of the Bankruptcy Court, this United States District Court for the District of Colorado ("District Court") "functions as an appellate court and is authorized to affirm, reverse, modify or remand the Bankruptcy Court's ruling." *In re Martin*, 500 B.R. 1, 3 (D.Colo.2013)(citing 28 U.S.C. § 158(a); FED.R.BANKR.P. 8013). The standard of appellate review for a conclusion of law is *de novo*. *Carpenter v. Berkeley Fed. Bank & Tr. FSB (In re Carpenter),* 200 B.R. 47, 48 (D. Colo. 1996). Furthermore, "[t]he Bankruptcy Court's factual findings, including findings regarding intent, are reviewed for clear error." *In re Cupit*, 541 B.R. 739, (D. Colo. 2015), *In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012).

## STATEMENT OF THE CASE

This appeal arises from an Order of the Bankruptcy Court entering judgment in favor of Appellee and against Appellant in Adversary case number 22-01258 TBM on July 10, 2023 ("Order.")  The Order addresses the issue before this court, that is, whether a debt is excepted from discharge under 11 U.S.C. § 1328 as violative of 11 U.S.C. § 523(a)(2)(A) of the bankruptcy code.

Appellant commenced his Chapter 13 proceeding, assigned Case no.: 22-12455 TBM with the filing of a voluntary petition on July 28, 2022 ("Petition Date.") Docket #1. Appellee commenced an adversary action against Appellant on October

24, 2022.  Related thereto, Appellee filed a motion for summary judgment on May

9, 2023 (dkt. No.: 23) to which appellant responded on May 23, 2023 (dkt. No.:

24). Appellee filed a response thereto on June 16, 2023 ( (dkt. No.: 27).  The

bankruptcy court granted the motion for summary judgment for Appellee on July

10, 2023 (dkt. No.: 28) and followed with judgment for Appellee on the same date

(dkt. No.: 29).

The issue before the bankruptcy court was whether Appellant's obligation to

Appellee was excepted from discharge pursuant to 11 USC section 523 (a)(2)(A).

The bankruptcy court gave deference to a prepetition order entered in Colorado

state court finding that appellant had committed the tort of false representation in

its business dealings prior to the filing of the bankruptcy petition. Notably, those

business dealings did not involve the Appellee, as same was an assignee of a claim

held by individuals known as the Desmonds.

## **RELEVANT CODE SECTION**

11 U.S.C. § 523(a)(2)(A):

(a)A discharge under section 727, 1141, 1192 , 1228(a), 1228(b), or 1328(b)
of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing
of credit, to the extent obtained by—
 (A) false pretenses, a false representation, or actual fraud, *other than a
statement respecting the debtor's or an insider's financial condition*;

11 U.S.C. § 523(a)(2)(A) [emphasis provided].

## **SUMMARY OF APPELLANT'S ARGUMENT**

Members of the Desmond family entered a verbal agreement with Appellant to

process CBD ("cannabidiol") from raw hemp. On information and belief, at some point, the Desmonds assigned their claim to an entity called Hemp Recovery Company, LLC (Appellee.) Litigation was commenced in state court under Appellee's name asserting various legal theories. Within the state court matter, Appellee prevailed as to its claims, under state law, for false representation, nondisclosure and concealment, and negligent misrepresentation. Appellee proceeds in this forum under § 523(a)(2)(A). As such, it relies heavily on a state court judgment and an appellate order entered against Defendant for the proposition that summary judgment is appropriate. Appellee argues that all the elements of collateral estoppel are present to warrant entry of judgment against Defendant as a matter of law. Appellant argues that the assignment of the tort violates public policy, that the trial court misapplied collateral estoppel, and that the issue of standing, although not raised in the state court matter, is a question of subject matter jurisdiction and was properly raised in both the adversary case as well as within this appeal.

## *STATE COURT LITIGATION*

In 2019 Appellee commenced litigation in state court against Appellant and other parties, before Judge Morris Hoffman.[1]  After a three-day trial, the court made the following observations and findings.  These are the highlights: [2]

_____

[1] Styled *Hemp Recovery Co, LLC v. Thomas Alan Boyd, Christopher P. Boyd, Foothills Ventures, LLC and Sling Logistics, LLC*, Denver County District Court, case number 2019CV30498.

[2] See Plaintiff's Exhibit no.: 2, transcript of the January 15, 2020 hearing before Judge Morris Hoffman, beginning on p. 162.

    a. I suspect Alan Boyd has a lot more to do with Sling Logistics than we know. But that's a suspicion -- I'll talk about this a little later -- that Plaintiff has not really proved in this case. But I suspect it to be true. P. 161.

    b. From the very beginning, the four of these people, the two Desmonds and the two Boyds, have always been talking about two different -- somewhat overlapping, but largely parallel -- things.  P. 165.

    c. The Boyds, both of them, had represented they could do this through the entity -- the other Defendant is Foothills Ventures.  They didn't do it.  They made rep -- misrepresentations about their ability to do it. P. 166.

    d. We had an agreement you would extract our forty-four hundred pounds.  We would split the CBD oil fifty-fifty. P. 167.

    e. Where Mr. Christopher Boyd and his wife actually did some of the product creation using some of the CBD oil. But this was all -- I'm not entirely clear on this. P. 167.

    f. There's no dispute that Mr. Desmond sent a hundred and eighty thousand dollars to Sling Logistics. P. 168.

    g. I have no idea what his agreement was with Sling.  I have nothing to do with Sling.  Sling is Matt and that's all there is to it.  I had nothing to do with this. I have no idea why he sent in a hundred and eighty thousand dollars.  I have no idea what he got for it.  I have no idea why he didn't get anything for it. All right.  Here's how I resolve this dispute.  In terms of bucket one, I find that on or about August 19th, 2017, both of the Desmonds and both of the Boyds reached an agreement.  A standard agreement in the industry under which the Desmonds would send the Boyds forty-four hundred pounds of hemp.  And the Boyds would extract that hemp for CBD oil.  And they would split that fifty-fifty.  Pp. 170-171.

    h. I think what happened is that there was a misrepresentation from the very

beginning.  And that by the time Mr. Desmond realized there was this misrepresentation -- and, frankly, also because he still wanted to make a lot of money with Alan Boyd in filling this general financing space.  That he decided to keep going along with this, and bought the equipment for them.

i.  I find that Alan Boyd -- but again, not Chris Boyd -- induced Mr. Desmond to invest in this factoring scheme with Sling Logic [sic].  I believe Mr. Desmond, that Alan Boyd touted this factoring as an easy way to make some short-term money.  I mean, heck, it was six to nine percent per month.  And this was the way to do it.  P. 174.

j.  Because I have really no idea what Alan Boyd has to do with Sling Logistics. I think he prob -- as I already said, I think he probably has something to do with it. I don't think Christopher Boyd has anything to do with Sling Logistics. And I don't think he knows what happened to this hemp. As to the -- let me talk now about bucket two, the factoring. I find that Alan Boyd -- but again, not Chris Boyd -- induced Mr. Desmond to invest in this factoring scheme with Sling Logic [sic]. P. 174.

k.  Alan Boyd fraudulently entered into this agreement by claiming that he was the chief operating officer, which he was not and never had been.  His own connection to Transtar is that his son owned it, or owned an interest in it. And his son let him use the name Transtar in his email address. P. 174.

l.  And Transtar Financial, LLC. It is signed, apparently, by Mr. Killinger and signed by Alan Boyd as COO. I think that means chief operating officer of Transtar Financial, LLC. That was false. Alan Boyd had, I believe, Christopher Boyd's testimony that Alan Boyd had nothing to do with Transtar Financial. That was Christopher Boyd's company. Alan Boyd fraudulently entered into this agreement by claiming that he was the chief operating officer, which he was not and never had been. His own connection to Transtar is that his son owned it, or owned an interest in it. And his son let him use the name Transtar in his email address. That's as much as Alan Boyd has to do with Transtar. And yet, we have this participation agreement with him entering it, allegedly, entering it -- purporting to enter into it on behalf of Transtar. P. 174.

m.  And yet, we have this participation agreement with him entering it, allegedly, entering it -- purporting to enter into it on behalf of Transtar.  By the way, it's called participation agreement, but it's a factoring agreement when you read the definitions.  P. 175.

n.  In making -- in inducing Mr. Desmond to make this investment in Sling

Logistics, Alan Boyd not only -- Alan Boyd not only educated Mr. Desmond and thereby induced him into doing this.  But he also failed to disclose to Mr. Desmond that he, Alan Boyd, had been convicted of prior felonies in Federal Court.  He also failed to disclose that at the moment the Desmonds parted with their forty four hundred pounds of hemp to have the Boyds extract.  Alan Boyd also never told Mr. Desmond, either at the time Mr. Desmond -- he induced Mr. Desmond to invest in Sling.  Or at the time he induced Mr. Desmond to hand over forty-four pounds of hemp.  That the other -- some of the other people that Mr. Alan Boyd induced to invest with Sling were prison buddies of his.  And of course, at neither time did he disclose to either of the Desmonds that he was facing an eleven-million-dollar restitution judgement as a result of that criminal case in Federal Court. P. 177.

o. I find that Plaintiff has proved that Christopher Boyd -- and I don't think Mr. Christopher Boyd denies he was an agent of Foothill Ventures.  In fact, he's the principal owner.  I think eighty percent owner of Foothills Ventures.  They've not proved Christopher Boyd was an agent of Sling Logistics.  And in fact, again, they're not aiming any of the second bucket, the factoring bucket at Christopher Boyd.  I also find -- and this goes back to what I said earlier -- that the Plaintiffs have not proved, to my satisfaction, even just to a preponderance, that Alan Boyd was an agent of Sling Logistics. P. 180.

p. And to me, I need to know much more about what happened to these things to reach the conclusions, generally, that Alan Boyd was the agent of Sling. I do think Alan Boyd was the agent of Foothills Ventures. He -- his -- he was part of this discussion with the Desmonds about how they could handle the extraction. P. 181.

q. But some of this agency issue depends on me knowing much more about tracing.  And to me, I need to know much more about what happened to these things to reach the conclusions, generally, that Alan Boyd was the agent of Sling.  I do think Alan Boyd was the agent of Foothills Ventures. He -- his -- he was part of this discussion with the Desmonds about how they could handle the extraction.  P. 181.

r. By the way, I need to acknowledge that the Desmonds have assigned their claims to the Plaintiff.  That's why I've been calling them Desmonds instead of Plaintiffs.  They are not the Plaintiff.  The Plaintiff in this case is Hemp Recovery Company.  And the assignment is of record.  The Plaintiff has eight claims.  All eight of them were at least originally alleged in both

buckets.  And at least originally also alleged against all four Defendants.  P. 181.

s.  The eight claims of civil theft, securities fraud, untrue statement, securities fraud, scheme to defraud, false representation -- that's -- I'm going to lump fourth, fifth and sixth claims all together as common law fraud claims. Plaintiff calls them false representation.  (inaudible) claim four, nondisclosure.  Concealment, that's claim five.  And negligent misrepresentation, claim six.  I'm lumping them all into fraud. P. 181.

t.  But that's why the civil theft statute talks about obtain or retain property. Plaintiffs have proved -- Plaintiff has proved the first three elements.  But I don't think they've proved intentional or knowing deprivation of the property, permanently.  This requires a high level of mens rea.  It's not just reckless.  It's not just that Alan picked a bad person to store the prop -- to store this.  That he was negligent in not keeping track of it.  He didn't know who ran the warehouse, for crying out loud.  All of that's negligent.  It's not knowing.  To prove -- and I know that civil theft doesn't require reliance, exactly.  It -- except in the sense of being permanently deprived.  And there's no doubt they were permanently deprived.  But the Plaintiff has to prove that the Defendants knowingly deprived them, or intentionally deprived them. And here's where tracing what happened to this would have been of some benefit.  I have no idea if either of these Defendants benefitted at all from the theft of the forty-four hundred pounds.  P. 182.

u.  Plaintiff has to prove that these Defendants were almost certain -- knew that it was almost certain that by doing what they did, the Desmonds would lose the forty-four hundred in product.  And lose the hundred and eighty thousand dollar in investment.  And they just haven't proved that.  They've proved, as I'll talk about later, that Alan Boyd induced this investment.  But they haven't proved that he got anything from it.  Although, I have suspicions.  And therefore, they just haven't proved these high mens rea that are required for that fourth level of civil theft.  So the civil theft count is dismissed with prejudice.  P. 183.

v.  Let me lump all the so-called fault/fraud claims together, four, five and six. False representation, nondisclosures, and negligent misrepresentation. These are common law versions of fraud with slightly different elements. But for all of the reasons I've already found in connection with the securities

# ARGUMENT

### *Appellant Argues Collateral Estoppel is not avaible to the trial court*

Appellant argues that collateral estoppel is available if the issues are identical. Appellant argues that "a statement respecting a debtor or insider's financial condition" is unique to 11 U.S.C. § 523(a)(2)(A). That is not simply a minor difference from the Colorado law—it is materially different.

Appellee argues that Appellant's reparations as to ability to perform under the verbal agreement were reparations as to his company—not himself personally. This is a tautology. Appellant, Chris Boyd, was found liable for false representation. Those reparations were as to an ability to perform. Of course he refers to Foothills. It is not as if there was a dual-tracking of two entities—Boyd and his company—performing services.

To argue that there is a separation between Appellant and Foothills is unavailing. The agreement—all verbal—appears to be a statement respecting a debtor's financial condition when it has a direct relationship with the

---

fraud, I find that the Plaintiff has proved these common law fraud type claims against Alan Boyd as to both buckets. As to -- and as against Christopher Boyd as to the hemp bucket. P. 191.

debtor's overall financial status; most specifically, the debtor's solvency or ability to repay a debt.

Second, the inadmissibility of statements as to ability to perform is not limited to the "financial condition or ability to pay."   As the 10th Circuit held in *Joelson*:

"[T]he better approach is the narrow interpretation that defines a statement of financial condition to be a statement of a debtor's net worth, overall financial health, or ability to generate income. This definition is "most consistent with the Supreme Court's interpretation of the statute, it is consistent with the history of the reason for the creation of the statute, [and] it strictly construes § 523(a)(2)(B) against the creditor and liberally in favor of the debtor . . ."   *In re Joelson,* 427 F.3d 700, 714 (10th Cir. 2005).

First, the misrepresentations made by the Appellant related to Foothills Ventures'—not the Appellant's—ability to perform its obligations under the Processing Agreement. Second, even if the misrepresentations referred to the Appellant, they had no bearing on the Appellant's solvency or ability to pay. Consequently, the Bankruptcy Court correctly held the misrepresentations were not oral statements respecting the Appellant's financial condition. However, the Bankruptcy Court erred in its application of collateral estoppel, in particular, whether the issue before the bankruptcy court was identical to an issue actually litigated and adjudicated in the prior proceeding?   Section

523(a)(2)(A) precludes the admission of "a statement respecting the debtor's or an insider's financial condition."  Colorado law has no equivalent limitation.

In that important sense, false representation under Colorado law materially differs from § 523(a)(2)(A).  In the state court proceeding, Judge Hoffman found for Appellee as to its claim of false representation. [3]

Under Colorado law, the elements of the tort of false representation are:

1. The defendant made a false representation of a past or present fact;

2. The fact was material;

3. At the time the representation was made, the defendant:

    (a) knew the representation was false; or

    (b) was aware that (he) (she) did not know whether the representation was true or false;

4. The defendant made the representation with the intent that (the plaintiff) (a group of persons of which the plaintiff was a member) would rely on the representation;

5. The plaintiff relied on the representation;

6. The plaintiff's reliance was justified; and

7. This reliance caused (injuries) (damages) (losses) to the plaintiff.[4]

---

[3] *Transcript*, p. 134.
[4] *Colorado Jury Instructions* 19.1

11 U.S.C. § 523(a)(2)(A) provides:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> (A)  false pretenses, a false representation, or actual fraud, **other than a statement respecting the debtor's or an insider's financial condition;**

11 U.S.C. § 523(a)(2)(A).   [Emphasis provided.]

The bankruptcy court applied collateral estoppel to find for the Appellee. The court cites *Bebo Constr. Co. v Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999) and several other cases [5] for the proposition that estoppel applied.

In the oft cited case of *In re Riggle*, 389 B.R. 167 (D. Colo. 2007), Judge Babcock addresses the issue of collateral estoppel under Colorado law. Noting that collateral estoppel is an equitable doctrine applied at the court's discretion and need not be applied in every case, *Riggle* states:

> [a]s this appeal arises out of a judgment of a Colorado District Court, Colorado law determines the preclusive effect of the state judgment.  Under Colorado law, the doctrine of collateral estoppel "bars relitigation of an issue if: **(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;** (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; **(3) There was a final judgment on the merits in the prior proceeding;** (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding."

*Riggle*, at 173, (Emphasis added.)

---

[5] *Order on Plaintiff's Motion for Summary Judgment*, pp. 12 and 13.

To the extent Judge Hoffman's findings refer to financial condition, such statements are inadmissible in the case at bar.

There is nothing in the state court findings to suggest that the Appellant and the Desmonds memorialized *in writing* their respective roles in the venture. Indeed, Appellee (as assignee for the Desmonds) did not proceed under § 523(a)(2)(B)— which calls for an agreement in writing.

Given the (surprising) absence of a written agreement between the Desmonds and the Appellant, it is fair to assume that Judge Hoffman relied upon conversations between the parties as to their dealings.  A review of the state court's findings of fact and conclusions of law support this inference.  References to representations, if almost exclusively, came from Alan Boyd, and had to do with "financial condition" of the company.  That is, an ability to perform. [6]

To the extent Judge Hoffman's findings refer to financial condition, such statements would have been inadmissible in the case at bar.   And for good reason.

---

[6] "Had Congress intended § 523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, it could have so specified — *e.g.,* "statement of the debtor's financial condition." The Court also agrees that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about that asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent. A statement about a single asset, thus, can be a "statement respecting the debtor's financial condition." *Id*, at 1755.

Congress saw fit to exclude the less-than-trustworthy verbal statements about a Debtor's business and ability to perform by excluding same from § 523(a)(2)(A). The trial court offers little direction as to this point. It simply concludes that the statements were not related to the financial condition of Appellant and his company. Appellant disagrees. If the communications between the parties, all verbal, and cited by Judge Hoffman, were not representations as to financial condition (i.e., ability to perform, time to perform, when to perform), what were they? Again, there is nothing in the record to suggest the parties knew one another informally. Rhetorically speaking—what else would two joint venturers talk about if not the Appellant's ability to perform.

The trial court's conclusory statement that the misrepresentation would be inadmissible and falls outside the orbit of § 523(a)(2)(A) is reversable error as a matter of law and fact.

The Tenth Circuit in *In re Wallace*, 840 F.2d 762 (10th Cir. 1988) determined that while the bankruptcy court ultimately decides if a debt is dischargeable under § 523, collateral estoppel may be invoked to prevent a party from relitigating settled facts. The court set forth three conditions which would result in a party being bound by previous litigation:

1. the issue to be precluded is the same as that involved in the prior state action;
2. the issue was actually litigated by the parties in the prior action; and
3. the state court's determination of the issue was necessary to the resulting final and valid judgment.

*Id.* at 765.

In the case at bar, Appellee argues that the trial court can enter judgment, as a matter of law, without the need for additional evidence. As described above, the problem with this argument is that § 523(a)(2)(A) is not identical to the common law claims of fraud, false pretenses and the like.[7]

In support of its argument there is no "genuine issue of fact," Appellee cites to various state court orders and a transcript of testimony from the trial. Appellee attaches no affidavits or declarations by witnesses under penalty of perjury. Within its motion for summary judgment, Appellee represents, again and again, what appear to be conversations between the parties as to Appellant's company's (i.e., Foothills') ability to perform, and the like.

The Tenth Circuit writes:

> Title 11, United States Code § 523(a)(2)(A) generally bars the discharge of the debts of an individual debtor to the extent that those debts were obtained by false pretenses, a false representation, or actual fraud. However, to the extent that those debts were obtained by the use of a false oral statement respecting the debtor's or an insider's financial condition, they are dischargeable. We hold that such false statements are those that purport to present a picture of the debtor's overall financial health. **Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes**

---

[7] Claims within section 523(a) do not often mirror similar yet different causes of action under state law.  For example, the Colorado Trust Fund Statute declares contractors are fiduciaries.  11 U.S.C. § 523(a)(4) excepts from discharge debts incurred for breach of fiduciary duty.  However, the latter statute also requires a showing of defalcation.  The state statute has no such requirement.  *See* Colo.Rev.Stat.  § 38-22-102.

**in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. However, such statements need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement.** What is important is not the formality of the statement, but the information contained within it — information as to the debtor's or insider's overall net worth or overall income flow.

*In re Joelson*, 427 F.3d 700, 714 (10th Cir. 2005). [Emphasis provided.]   [8]*See,*

*also, Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752 (2018).[9]

### *Assuming arguendo the assignment of the claim is valid, Appellee prosecutes an intentional tort for which it is not a victim—such a claim is barred by the doctrine of champerty. Appellee is not the real party in interest and lacks standing.*

---

[8] "Had Congress intended § 523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, it could have so specified — *e.g.,* "statement of the debtor's financial condition." The Court also agrees that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about that asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent. A statement about a single asset, thus, can be a "statement respecting the debtor's financial condition." *Id*, at 1755.

[9] "Had Congress intended § 523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, it could have so specified — *e.g.,* "statement of the debtor's financial condition." The Court also agrees that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about that asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent. A statement about a single asset, thus, can be a "statement respecting the debtor's financial condition." *Id*, at 1755.

In his findings, Judge Hoffman notes that the Desmonds assigned their claims against Defendants.[10]  Appellee's Cause of Action is for violation of 11 U.S.C. § 523 (a)(2)(A)—false pretenses, false representation or actual fraud.  These claims are intentional torts. An intentional tort is when an individual or entity purposely engages in conduct that causes injury or damage to another.

Champerty is defined as:

> a bargain by a person with a plaintiff or a defendant for a portion of the matter involved in a suit in the event of a successful termination of the action, which the person undertakes to maintain or carry on at his own expense. *State v. Chitty,* 17 S.C.L. (1 Bail.) 379, 400 (1830); 14 C.J.S. *Champerty and Maintenance* § 2 (1991); 14 Am.Jur.2d *Champerty and Maintenance* § 3 (1964).  A champertor is one who purchases an interest in the outcome of a case in which he has no interest otherwise. A champertous agreement is unlawful and void where the rule of champerty is recognized, and the tainted agreement is unenforceable. 14 C.J.S. *Champerty and Maintenance* § 17; 14 Am.Jur.2d *Champerty and Maintenance* § 7.

*Osprey, Inc. v. Cabana Ltd. Partnership*, 532 S.E.2d 269  (S.C. 2000), at 373.

Colorado recognizes the concept of champerty.  *See In re Thomas*, 387 B.R. 808 (D. Colo. 2008).  As such, the assignment of an intentional tort to an unrelated third party to champion is an unenforceable agreement.  To the extent there exists any claims against Defendant, Mr. and Mrs. Desmond may be the real parties in interest, but not *Hemp Recovery Company, LLC*.  And the Desmonds were not a party to the adversary proceeding.  See Fed.R.Civ.P. 17(a), as adopted in Fed.R.Bankr.P. 7017. [11]

---

[10] Exhibit 2, at p. 181.

[11] It is not clear to Appellant whether the claim was assigned irrevocably or revocably.  No matter, as this Plaintiff lacks standing.

## _Claims of proper standing or champerty are not mandatory affirmative defenses_

Colo.R.Civ. P. 8 sets forth a concise list of affirmative defenses that must be asserted or are waived. Most affirmative defenses must be pleaded in a timely manner by a defendant in order for the court to consider them, or else they are considered waived by the defendant's failure to assert them. The defense of champerty is not among those affirmative defenses.[12] The classic unwaivable affirmative defense is lack of subject-matter jurisdiction.

## _Rooker-Feldman_ **is not applicable**

_Rooker-Feldman_ precludes federal district courts from effectively exercising appellate jurisdiction over claims "actually decided by a state court" and claims "`inextricably intertwined' with a prior state-court judgment." _Kenmen Eng'g v. City of Union,_ 314 F.3d 468, 473 (10th Cir.2002) (citing _Rooker,_ 263 U.S. at 415-16, 44 S.Ct. 149, and _Feldman,_ 460 U.S. at 483 n. 16, 103 S.Ct. 1303). _Mo's Express, LLC v. Sopkin_, 441 F.3d 1229 (10th Cir. 2006), at 1233. Likewise, the doctrine of comity with the states is not disturbed by reversal inasmuch as the issue of dischargeability is a core proceeding within 28 U.S.C § 158, belongs solely to the bankruptcy court, and "financial condition" was not before the state court. The state court order reflects that the aggrieved party is not the Appellee, but an assignee of a claim from

---

[12] Colo.R.Civ.P. 8(c)

the Desmonds.  Further, there is nothing in the record to suggest that the Appellant raised the issue of standing, real party in interest, or the defense of Champerty in the state court proceeding.  The rules regarding asserting affirmative defenses is set forth in Colo.R. Civ. P. 8.  No mention of champerty.

## **"Preservation Doctrine" was not violated in the state court matter**

The doctrine of preservation requires that an issue be preserved for appellate review, only if it was first raised in the nisi prius court.  As a general rule, issues not presented in the trial court are deemed waived and cannot be raised on appeal.  *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo. 1986), at 513.

In the state court trial, Appellant did not raise the issue of standing, real party in interest, or the defense of "champerty."  Appellant submits that this is not fatal to raising the issue with the bankruptcy court, as he did, and were preserved in that adversary case for review on appeal.

## *Article III Jurisdiction*

In 1978, Congress revised the Bankruptcy Act and created bankruptcy courts as adjuncts of the district courts.[13] Although the Court has been inconsistent, it has now settled upon the rule that, "at an irreducible minimum," the constitutional requisites under Article III for the existence of standing are that the plaintiff must personally have: 1) suffered some actual or threatened injury; 2) that injury can fairly be traced

---

[13] Bankruptcy Act of 1978, Pub. L. No. 95–598, 92 Stat. 2549, *codified in* titles 11, 28. The bankruptcy courts were made adjuncts of the district courts by § 201(a), 28 U.S.C. § 151(a).

to the challenged action of the defendant; and 3) that the injury is likely to be redressed by a favorable decision.[14] Standing is designed to ensure that the party seeking relief has a cognizable claim in the outcome of the case.[15] Moreover, when there are multiple parties to a lawsuit brought in federal court, "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor as of right." *See Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645 (2017) A litigant must also maintain standing to pursue an appeal. *See, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). **Notably, in the case at bar, the aggrieved (i.e., the Desmonds) are not parties within the adversary. [16]** In *Spokeo, Inc. v. Robins*, the Court explained that a concrete injury

---

[14] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Importantly, standing is not "dispensed in gross," and, accordingly, a plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought." *See Davis v. FEC*, 554 U.S. 724, 734 (2008). Moreover, when there are multiple parties to a lawsuit brought in federal court, "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor as of right." *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017).

[15] "Although we there noted that the categories of judicially cognizable injury were being broadened, *id.,* at 154, we have more recently stressed that the broadening of *categories* "is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Schlesinger v. Reservists Comm. To Stop the War, 418 U.S. 208* (1974), at 218-219; *see also, Community Board 7 of Borough of Manhattan v. Schaffer*, 84 NY2d 148 (1994).

[16] *Foster v. Center Tp. Of LaPorte County*, 798 F.2d 237 (7th Cir. 1986) at 240-241. (Article III of the Constitution limits the power of the federal judiciary to the resolution of "cases" and "controversies." [Citations omitted] In its constitutional dimension, the issue of a party's standing is a component of the case-or-controversy analysis, and, thus, bears on the power of a court to entertain the party's complaint. Citations omitted].  We are, of course, obligated to consider the issue of standing, like any other question of our Article III jurisdiction, whether the

requires that an injury must "actually exist" or there must be a "risk of real harm," such that a plaintiff who alleges nothing more than a bare procedural violation of a federal statute cannot satisfy the injury-in-fact requirement.[17]

It is well-settled that a "judgment or order issued without subject matter jurisdiction is void, and that defect may be raised at any time and may not be waived." [18]  If a court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. [19]

In the case of *Stark v. Goldberg*, 297 AD2d 203 (1st Dept 2002), citing the Supreme Court decision of *Allen v. Wright*, 468 U.S. 737 (1984), [20] standing goes to subject matter jurisdiction and may be raised for the first time on appeal sua

---

parties have raised it or not. [Citations omitted] ("[E]very federal appellate court has a special obligation to `satisfy itself not only of its own jurisdiction, but also that of the lower court.'") Citations omitted]. If we discover that the lower court lacked jurisdiction, because the plaintiff did not have standing, then we have jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court entertaining the suit. Citations omitted] It is immaterial that both parties failed to notice the jurisdictional defect. [Citation omitted]

[17] ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robin*, 136 S.Ct. 1540 (2016), at 1548)

[18] "It is black-letter law that a judgment rendered without subject matter jurisdiction is void, and that the defect may be raised at any time and may not be waived (see 21 CJS, Courts, §§ 108-110, 116)."

[19] Fed.R.Civ.P. 12 (h)

[20] *Accord, Axelrod v. New York State Teachers' Retirement System*, 54 A.D.2d 827(3rd Dept 1988) As a result, plaintiffs have not been personally injured by the challenged statute and, therefore, lack standing to complain about any alleged deficiencies in the law (*see*, *Matter of Eaton Assocs. v Egan*, 142 A.D.2d 330, 334). Since standing is jurisdictional and goes to a court's authority to resolve litigation, we can raise this matter *sua sponte* (*supra*, at 334-335). In the absence of standing, plaintiffs' complaint was properly dismissed. *Id* at 828.); *Murray v. State Liquor Authority*, 139 AD2d 461 (1st Dept 1988) (a party's standing constitutes a question of subject matter jurisdiction.)

sponte.  Admittedly, Appellant did not raise standing in the state court matter but did so in the bankruptcy court.  As Appellee lacked standing to prosecute its claim in the underlying adversary case, the judgment should be set aside as a matter of law.

In the case of *Wells Fargo v. Mastropaolo*, the court concluded that lack of standing is tantamount to a lack of subject matter jurisdiction as there is no aggrieved party, and without a genuine controversy, there is no subject matter jurisdiction. [21]

### *CONCLUSION*

Appellee lacked standing to proceed in an Article III court.  In the context of an appeal, the question of standing can be supported by abstract or slight injuries, such as probabilistic injury, reputational injury, or an award of nominal damages, attorney fees. [22] Standing to appeal has been denied if no adverse effect can be

---

[21] *Wells Fargo v. Mastropaolo*, 42 A.D.3d 239 (2007), at 243 (The issue has remained unsettled, however, because other decisions have concluded that a lack of standing is tantamount to a lack of subject matter jurisdiction, and therefore is not waivable (*see Stark v Goldberg,* 297 AD2d 203, 204 [2002]; *Axelrod v New York State Teachers' Retirement Sys.,* 154 AD2d 827, 828 [1989]; *Matter of Eaton Assoc. v Egan,* 142 A.D.2d 330, 334-335 [1988]). The reasoning underlying such decisions is that where there is no aggrieved party, there is no genuine controversy, and where there is no genuine controversy, there is no subject matter jurisdiction (*see Security Pac. Natl. Bank v Evans, supra* at 284 [Catterson, J., dissenting]); but see *Deutsche Bank Nat'l Trust Co. v. Barwick-Bissat*, 2015 NY Slip Op 30225 (2015).

[22] *Wright & Miller's Federal Practice and Procedure*, § 3902

shown. [23]   Appellee lacked standing to prosecute a claim under 11 U.S.C. §

523(a)(2)(A)

     WHEREFORE, Appellee prays the Court reverses the bankruptcy court and

remand the matter back consistent with this Court's findings.

Dated:  December 29, 2023        */s/ Stephen Berken*
                    Stephen E. Berken #14926
                    Berken Cloyes PC
                    1159 Delaware Street
                    Denver, CO   80204
                    (303) 623-4357
                    Email: stephenberkenlaw@gmail.com
                    Attorneys for Defendant

---

[23] *Id*.; *See also Wachovia Securities, LLC v. Loop Corp.*, 726 F.3d 899, 906-909.
(7th Cir. 2013).

## CERTIFICATE OF MAILING

I hereby certify that on this 29th day of December 2023, I served a true and correct copy of the foregoing Reply via the court's electronic filing system/ecf, addressed to the following:

Via CM/ECF

Michael Lamb   via ecf: mcl@kjblaw.com

Chris Boyd
1545 Skimmer Street
Berthoud, CO 80513

By:  */s/ Stephen Berken*

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Appellant requests oral argument to the extent that this Court deems it helpful to clarify matters raised in the briefs.

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Requirements, Typeface Requirements, and Type Style Requirements

The undersigned counsel hereby certifies that with respect to the foregoing:

1. This filing complies with the page limitation of Fed.R.Bankr.P. 8015(a)(7) as the foregoing **APPELLANT'S RESPONSE TO APPELLEE'S ANSWER BRIEF** is proportionally spaced and contains less than 30 pages.

2. This filing complies with the typeface requirements of Fed.R.Bankr.P. 8015(a)(5) and the type style requirements of Fed.R.Bankr.P.8015(a)(6), because this filing has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Times New Roman font.

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **APPELLANT'S RESPONSE TO APPELLEE'S ANSWER BRIEF** as submitted in digital form via the United States District Court for the District of Colorado's ECF/CM system, is an exact copy of the written document filed with the Office of the Clerk. The digital submission has been scanned for viruses with Avast Antivirus, program version

23.10.6086, updated December 29, 2023, and according to the program, is free of

viruses. In addition, I certify to have made all required privacy redactions.

Dated:  December 29, 2023

/s/ Stephen E. Berken, Esq.
**BERKEN CLOYES P.C.**
1159 Delaware St.
Denver, CO 80204
Tel: (303) 623-4357
Facsimile: (720) 554-7853
Email: stephenberkenlaw@gmail.com
*Counsel for Appellant*